IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN STANCU, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:18-cv-1737-E-BN |
| | § | |
| HYATT CORPORATION/HYATT | § | (Consolidated with: |
| REGENCY DALLAS, | § | No. 3:18-cv-3383-E-BN; |
| | § | No. 3:19-cv-1971-E) |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Three *pro se* employment actions filed by Plaintiff John Stancu – two that he filed in federal court and one that he filed in state court that was removed to federal court – are consolidated before the Court and referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ada Brown.

As ordered by the Court, Stancu filed an amended complaint solely against Defendant Hyatt Corporation. *See* Dkt. No. 31. Hyatt answered. *See* Dkt. No. 33. And, on August 5, 2020, the Court entered an initial scheduling order under the Civil Justice Expense and Delay Reduction Plan for the Northern District of Texas and Federal Rule of Civil Procedure 16(b). *See* Dkt. No. 37.

Hyatt now moves to dismiss this action under 28 U.S.C. § 1915(e)(2), alternatively requesting that the Court further consolidate these consolidated cases

with an action that Stancu filed in 2020. *See* Dkt. No. 38. And, although Stancu has not filed a response, he will not be prejudiced by the Court's consideration of Hyatt's motion at this point, because the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should deny the motion without prejudice to the parties' meeting and conferring and filing a joint proposal in support of consolidation that would result in the administrative closure of these cases in favor of litigating all claims Stancu now asserts against in Hyatt in the last-filed matter.

## Applicable Background

"Stancu accepted an entry-level, shift engineer position at Hyatt in October 2015." *Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, 791 F. App'x 446, 448 (5th Cir. 2019) (per curiam). And, "[u]ntil March 6, 2020, [he] worked 'as a shift engineer at the Hyatt Regency Dallas…. Having filed about twenty lawsuits in the past thirty years, he is also a prolific *pro se* litigant. Hyatt is his latest target.'" *Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:20-cv-864-E-BN, 2021 WL 495883, at *1 (N.D. Tex. Jan. 26, 2021) (quoting *Stancu*, 791 F. App'x at 447; citation omitted), *rec. accepted*, 2021 WL 487756 (N.D. Tex. Feb. 10, 2021).

Stancu has now filed six cases against Hyatt in this district: "The first two were consolidated and dismissed, after the court granted Hyatt summary judgment on Stancu's claims. *See Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:17-cv-675-S-BN (consol. with 3:17-cv-2918-L), 2018 WL 4471786 (N.D. Tex. Aug. 28, 2019),

*rec. accepted*, 2018 WL 4471692 (N.D. Tex. Sept. 18, 2019), *aff'd*, 791 F. App'x 446 (5th Cir. 2019)." *Id.* This consolidated case, in which Stancu was granted leave to proceed *in forma pauperis* (IFP), *see* Dkt. No. 9, comprises his third, fourth, and fifth lawsuits. And Stancu paid the filing fee to bring case number six on April 14, 2020. *See Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:20-cv-864-E-BN (N.D. Tex.).

> Stancu filed his first lawsuit against Hyatt on March 8, 2017. A few months later, he moved to amend the complaint. That motion, however, failed to comply with the court's standing order on non-dispositive motions and was accordingly stricken. Stancu filed a second lawsuit against Hyatt on October 23, 2017. Around the same time, he renewed his motion to amend the complaint in his first lawsuit. The facts and claims in Stancu's proposed amended complaint were substantially similar to the facts and claims raised in the second lawsuit. The district court consolidated the two cases and designated Stancu's proposed amended complaint as the consolidated complaint. The consolidated complaint raised claims of unlawful discrimination under the Age Discrimination in Employment Act ("ADEA"), unlawful retaliation, violation of the Family and Medical Leave Act ("FMLA"), creation of a hostile work environment under the ADEA, breach of contract, and pattern-and-practice discrimination.

*Stancu*, 791 F. App'x at 448.

The amended complaint in Stancu's first two (subsequently consolidated) cases concerned two EEOC complaints: one alleging discriminatory conduct from October 23, 2015 to December 13, 2016 and a second alleging discriminatory conduct from March 1, 2017 to July 31, 2017. *See Stancu*, No. 3:17-cv-675-S-BN, Dkt. No. 56 at 39-40, 55, 82-83.

And, because Stancu is proceeding IFP in this consolidated case, the Court

- 3 -

screened his claims at the time it ruled on a motion to dismiss filed by Defendant Gallagher Bassett Services, Inc. *See generally Stancu v. Hyatt Corporation/Hyatt Regency Dallas*, No. 3:18-cv-1737-E-BN (consol. with: Nos. 3:18-cv-3383-E-BN; 3:19-cv-1971-E), 2020 WL 853859 (N.D. Tex. Jan. 30, 2020), *rec. accepted*, 2020 WL 833645 (N.D. Tex. Feb. 20, 2020). In doing so, the Court observed that

> [t]hrough the [third] filed action, -1737, Mr. Stancu appears to raise ADEA and FMLA retaliation claims against Hyatt based on an EEOC complaint that he filed in May 2018, asserting that the alleged discriminatory conduct occurred from April 10, 2018 to May 18, 2018. *See, e.g.*, Dkt. No. 3 at 1, 14-17. The [fourth] filed action, -3383, appears to bring additional ADEA and FMLA retaliation claims against Hyatt based on an EEOC complaint that Mr. Stancu filed in September 2018, asserting that the alleged discriminatory conduct occurred from May 21, 2018 to September 24, 2018. *See, e.g.*, No. 3:18-cv-3383, Dkt. No. 3 at 1, 17-21. And, in the action that Mr. Stancu filed in state court, he alleges that he was injured on the job on August 23, 2018 and that his employer continues to retaliate against him based on his pursuit of employment discrimination litigation. *See generally* No. 3:19-cv-1971, Dkt. No. 2-2.

*Id.*

Stancu filed his sixth lawsuit after receiving a separate right-to-sue letter and alleges that the facts underlying that lawsuit "occurred after the filing of the last claim (August 16, 2019)." *Stancu*, No. 3:20-cv-864-E-BN (N.D. Tex.), Dkt. No. 3 at 4; *see also id.* at 32-36. This date is also when he filed *Stancu*, No. 3:19-cv-1971-E (N.D. Tex.). Through the latest suit, he again brings broad claims of discrimination and retaliation in violation of the ADA, the ADEA, Title VII, and the FMLA. *See Stancu*, No. 3:20-cv-864-E-BN (N.D. Tex.), Dkt. No. 3 at 4-30.

As this chronology reflects, while Stancu continued to bring many claims based

on the same theories, of the lawsuits against Hyatt implicated by the current motion to dismiss, each lawsuit concerned a separate time period. And, where possible, the Court has consolidated his pending cases. At times, however, the progress of a pending case (or cases) prevented consolidation with a new action filed by Stancu. Or his failure to comply with a court order prevented his attempt to amend claims in a pending case.

**Legal Standards and Analysis**

In support of dismissal under the IFP statute, Hyatt argues (1) that Stancu's allegation of poverty was demonstrably false "because he [subsequently] paid a filing fee to sue Hyatt in a separate case"; (2) that this consolidated case is frivolous because it is both "factually meritless and abuses the judicial process" and "duplicative of [Stancu's] prior litigation"; and (3) that this consolidated case is malicious "because it disrespects the judiciary and abuses the judicial process." Dkt. No. 38 at 4-13.

For the following reasons, Hyatt has not carried its burden to dismiss this consolidated action under the IFP statute. Even so, the undersigned finds that the prosecution and defense of these related cases has placed an undue burden on the parties and the Court.

Stancu's series of suits against Hyatt may be based on the same (or similar) theories. And their narratives may overlap. But the suits also seem to cover distinct times in his employment with Hyatt, an employment that has now ended. So, given the relatedness of Stancu's claims; that he no longer is employed by Hyatt; the age of

these proceedings; the April 26, 2021 Memorandum Opinion and Order Denying Defendant's Unopposed First Motion to Extend Pending Deadlines [Dkt. No. 43]; and the April 28, 2021 Scheduling Order for Trial [Dkt. No. 44], the undersigned finds that Hyatt's alternative request for consolidation – which may have merit with buy-in from Stancu – should be denied without prejudice to the parties' meeting and conferring and filing a joint proposal in support of consolidation that would result in the administrative closure of these cases in favor of litigating all claims Stancu now asserts against Hyatt (spread around four complaints) in the last-filed matter.

I.  Hyatt has not carried its burden to show that these actions should be dismissed under Section 1915(e)(2)(A) based on an untrue allegation of poverty.

Section 1915 "was designed to ensure that litigants would not be deprived of meaningful access to the federal judicial system due to their financial circumstances." *Bucklew v. St. Clair*, No. 3:18-cv-2117-N-BH, 2019 WL 2250886, at *2 (N.D. Tex. May 15, 2019) (citing *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)), *rec. accepted*, 2019 WL 2249718 (N.D. Tex. May 24, 2019). But gaining access under the statute requires "[a] litigant seeking IFP status [to] submit an affidavit identifying all assets he possesses, as well as a statement that he is unable to pay the necessary fees of bringing a federal civil action." *Smith-Garcia v. Harrison Cnty.*, 776 F. App'x 226, 227 (5th Cir. 2019) (per curiam) (citing 28 U.S.C. § 1915(a)(1)).

The governing statute further "specifies that '[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at

any time if [it] determines that ... the allegation of poverty is untrue.'" *Nottingham v. Warden, Bill Clements Unit*, 837 F.3d 438, 441 (5th Cir. 2016) (quoting 28 U.S.C. § 1915(e)(2)(A)). And "[d]ismissal is mandatory if the court determines 'at any time,' even after the plaintiff pays the filing fee, that the contents of an IFP application are false." *Id.* (quoting 28 U.S.C. § 1915(e); citations omitted); *see also Castillo v. Blanco*, 330 F. App'x 463, 466 (5th Cir. 2009) (per curiam) ("Importantly, § 1915(e)(2) is phrased in mandatory rather than permissive terms ….").

The statute "does not define the word 'untrue,' but the fact that the penalty for an 'untrue' allegation of poverty is not simply an order requiring full payment, but instead is dismissal of the entire action, suggests," at least to the United States Court of Appeals for the Seventh Circuit, "that Congress meant something like 'dishonest' or 'false,' rather than simply 'inaccurate.'" *Robertson v. French*, 949 F.3d 347, 351-52 (7th Cir. 2020) (further observing that "[o]ther circuits also understand it this way," citing *Nottingham*, 837 F.3d at 441; other citations omitted).

Consistent with this understanding, another judge of this Court has explained that

> [t]he United States Court of Appeals for the Fifth Circuit has approved a dismissal with prejudice where the defendants "provided proof of many inconsistencies" in the plaintiff's *in forma pauperis* application. *Castillo*, 330 Fed. App'x at 467. The plaintiff in *Castillo* had claimed "(1) the only autos or other valuable property he owned were an inoperable 1991 van and a 1991 truck worth $200; (2) he had no cash or savings or checking accounts; (3) he had been unemployed since 2005; and (4) he had not received money from any source in the past year." *Id.* But the defendants presented evidence "that [the plaintiff] owns several vehicles, runs one

or more businesses for which he was hiring employees, filled out a credit application in 2007 claiming a $100,000 salary, drew several months' rent from his checking account, and paid the $750 filing fee to run for governor of Louisiana in September 2007." *Id.* Courts have dismissed with prejudice for much less. *See, e.g.*, *Lay v. Justices-Middle Dist. Court*, 811 F.2d 285 (5th Cir. 1987) (affirming dismissal with prejudice where a prisoner submitted a true financial affidavit but forged the signature of a prison official on it); *Mathis v. New York Life Ins. Co.*, 133 F.3d 546, 547 (7th Cir. 1998) (affirming dismissal with prejudice where plaintiff did not disclose ownership of a home with $14,000 of equity); and *Romesburg v. Trickey*, 908 F.2d 258, 259 (8th Cir. 1990) (affirming dismissal with prejudice where plaintiff did not disclose ownership of four unencumbered real estate lots).

But dismissal is not warranted in every case of a false or incorrect statement on an *in forma pauperis* application. *See, e.g.*, *Hunter v. Texas Energy Services LP*, Civ. A. No. 2:14-CV-142, 2014 WL 5426454, at *4 (S.D. Tex. Oct. 23, 2014) (granting *in forma pauperis* status even though plaintiff had stated on his financial affidavit that he was unemployed for the past twelve months instead of the past eight, which was the true number); *Camp v. Oliver*, 798 F.2d 434, 437-38 (11th Cir. 1986) (reversing district court's dismissal with prejudice where the prisoner plaintiff inaccurately claimed he had no cash or savings accounts on his affidavit but attached a prison account balance sheet that contradicted his claim). The United States Court of Appeals for the Eighth Circuit has persuasively held that 28 U.S.C. § 1915(e)(2)(A)

> does not mandate that the district court dismiss [the plaintiff's] claim if it finds that certain assertions in his affidavit are untrue; instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for in forma pauperis status given the facts that are true. Indeed, "[t]he purpose of this provision is to weed out the litigants who falsely understate their net worth in order to obtain in forma pauperis status when they are not entitled to that status based on their true net worth."

*Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000) (citing *Attwood v. Singletary*, 105 F.3d 610, 613 (11th Cir. 1997)). To rule otherwise would mean that any untrue statement on a financial affidavit, even in the smallest amount, would require dismissal under 28 U.S.C. § 1915(e)(2)(A).

*Gill v. Bennett*, No. 4:17-cv-611-O-BP, 2018 WL 3275494, at \*2-\*3 (N.D. Tex. Jan. 16, 2018), *rec. accepted*, 2018 WL 1663287 (N.D. Tex. Apr. 6, 2018); *but see Bucklew*, 2019 WL 2250886, at \*2 ("In the Fifth Circuit, dismissal under the IFP statute is predicated on the submission of false allegations in the affidavit rather than the litigant's actual financial status." (citing *Lay*, 811 F.3d at 285-86)); *id.* ("Based on *Lay*, courts in this circuit must dismiss a case based on a finding that the contents of an IFP application are false, even if the litigant would still qualify as a pauper." (citations omitted)).

Here, Hyatt argues that, although Stancu was employed by Hyatt on July 3, 2018, when he filed the first of the three actions consolidated here, affirming that he was unable to pay the filing fee, *see* Dkt. No. 4, "Stancu's claimed inability to pay a fee to file this case is demonstrably false" because, when Stancu filed his sixth case on April 14, 2020, he "did not seek IFP status. To the contrary, he paid the filing fee. This plainly contradicts Stancu's purported inability to pay a filing fee in this case." Dkt. No. 38 at 4 (emphasis omitted).

> That inconsistency is even more glaring considering the following. In his latest separate proceeding, Stancu alleges that Hyatt terminated his employment on March 6, 2020. Thus, at the time he paid the filing fee to sue Hyatt for the sixth time on April 14, 2020, Stancu was apparently unemployed. By contrast, at the time Stancu claimed under oath he was unable to pay the filing fee in this case, Stancu was actively employed by Hyatt. These situations are entirely incongruous. How can one claim financial inability to pay a filing fee while employed, but then pay a filing fee when unemployed?

*Id.* at 5 (citations and emphasis omitted).

First, Hyatt fails to mention that when Stancu moved for leave to proceed IFP on July 3, 2018, he affirmed that he had initiated bankruptcy proceedings in this district on June 15, 2018. *See* Dkt. No. 4 at 5, 7. And, absent additional evidence reflecting a litigant's financial status (particularly over time), *see, e.g.*, *Castillo*, 330 F. App'x at 466-67, the undersigned is not persuaded by the argument that an employed litigant who recently filed for bankruptcy and certifies that he is a pauper must have submitted a false IFP affidavit just because – some two years later – he manages to pay the filing fee even though he lost his job some five weeks prior.

Regardless, Hyatt has not shown either that Stancu was not sufficiently poor to proceed IFP in July 2018, *see, e.g.*, *Gill*, 2018 WL 3275494, at *3, or that Stancu submitted false allegations in his July 2018 affidavit, *see, e.g.*, *Bucklew*, 2019 WL 2250886, at *2.

II.  Hyatt has not carried its burden to show that these actions should be dismissed as frivolous or as malicious under Section 1915(e)(2)(B)(i).

As the plain language of the IFP statute reflects, "[a] case is not frivolous simply because it fails to state a claim." *Reddish v. J.P. Morgan Chase*, No. SA-10-CA-955-XR, 2011 WL 573413, at *2 (W.D. Tex. Jan. 3, 2011) (collecting cases), *rec. accepted*, 2011 WL 573411 (W.D. Tex. Feb. 15, 2011); *see* 28 U.S.C. § 1915(e)(2)(B) (providing for dismissal if the court determines that an action "(i) is frivolous or malicious" *or* "(ii) fails to state a claim on which relief may be granted"). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure

12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam). And courts generally apply the familiar Rule 12(b)(6) analysis to those dismissals, under which dismissal "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the IFP statute nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11.

But "[a] frivolous complaint 'lacks an arguable basis in law or fact.'" *Burnette v. RateGenius Loan Servs., Inc.*, 671 F. App'x 889, 892 (5th Cir. 2016) (per curiam) (quoting *Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995); affirming dismissal of FMLA interference and retaliation claims as frivolous). "'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist,'" and it "'lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless.'" *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (quoting *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)).

Here, Hyatt argues that

> Stancu's employment law claims have previously been brought before this Court and were summarily dismissed because he was unable to factually support his claims. In this latest action, Stancu merely seeks

- 11 -

> to regurgitate his prior accusations and seek duplicative relief from this Court.
>
> For instance, Stancu claims that he was subject to a "labor camp style of scrutiny." Among other meritless accusations, Stancu claims that he was denied training and forced to do jobs that he is unqualified for. He even claims that Hyatt attempted "several times to provoke plaintiff, a 63 year old man, to a physical fight." In sum, Stancu's claims are factually frivolous and are untethered from the facts and reality. Even if the Court found that the accusations may have some weight, the Court has already given Stancu ample chances to support these claims in his other five lawsuits.
>
> Stancu's claims are "delusional" and "wholly incredible." Accordingly, Hyatt asks the Court to exercise its wide discretion and dismiss Stancu's claims.

Dkt. No. 38 at 6 (citations omitted).

Hyatt may argue that some facts that Stancu asserts are not credible and that all facts alleged do not support recovery under the legal theories that Stancu advances, but those theories themselves are not indisputably meritless. *See, e.g.*, *Reddish*, 2011 WL 573413, at *2 ("Typical examples of claims which can be dismissed pursuant to § 1915(e), or its predecessor, § 1915(d), include: (1) claims against which it is clear that the defendants are immune from suit, (2) claims of infringement of a legal interest that clearly does not exist, and (3) claims which are barred by limitations." (footnotes omitted)).

And, earlier in this case, the Court screened the facts alleged under the IFP statute, concluding that Stancu had asserted claims for retaliation (under multiple statutes):

> Together, the three elements – engaging in a protected activity; an adverse employment action; and a causal link between the two –

>   make out a prime facie case of retaliation. A plaintiff need not establish a prima facie case in order to survive judicial screening under Section 1915(e)(2)(B). *Cf. Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). But a plaintiff must "plead sufficient facts on all of the ultimate elements of his claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citations omitted); *see also Meadows v. City of Crowley*, 731 F. App'x 317, 318 (5th Cir. 2018) (per curiam) ("*Raj*, however, does not exempt a plaintiff from alleging facts sufficient to establish the elements of her claims." (citations omitted)).
>
>   Against this legal framework, it is unclear whether Mr. Stancu has alleged facts to support each element, such that his claims as currently pled survive judicial screening under Section 1915(e)(2)(B). To cure this deficiency, the Court [granted] Gallagher Bassett's motion to dismiss without prejudice to Mr. Stancu's filing one final consolidated amended complaint containing sufficient factual information to allege a plausible claim under any theory applicable to the employment-related claims that he asserts across these three actions.

*Stancu*, 2020 WL 853859, at *4; 2020 WL 833645.

In response, Stancu filed an amended complaint. *See* Dkt. No. 31. And Hyatt answered. *See* Dkt. No. 33.

Particularly against this background, Hyatt's argument above does not persuade the undersigned that Stancu's amended complaint should now be dismissed under Section 1915(e)(2)(B)(i) because the facts alleged are clearly baseless. But Hyatt's argument above does tie into its argument that dismissal is required because these cases are duplicative of Stancu's prior litigation. *See* Dkt. No. 38 at 7-8. And this argument should be addressed under the malicious prong of the IFP statute.

"A complaint is malicious if it duplicates claims involving the same series of events and allegations of many of the same facts asserted by the same plaintiff in

- 13 -

prior or pending litigation." *Amrhein v. United States*, 740 F. App'x 65, 66 (5th Cir. 2018) (per curiam) (citing, as applicable, *Pittman v. Moore*, 980 F.2d 994, 994-95 (5th Cir. 1993)); *see also Shakouri v. Davis*, 923 F.3d 407, 410 (5th Cir. 2019) ("We have repeatedly stated that a claim qualifies as malicious if it is virtually identical to and based on the same series of events as a claim previously brought by the plaintiff." (citing *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988))). And, "[r]eading *Pittman* and *Wilson[ v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989),]* in conjunction, it is clear that the Court may dismiss an action as malicious when the complaint raises claims that would be barred by the principles of *res judicata*, whether or not the prior litigation has ended unsuccessfully for the plaintiff." *McGill v. Juanita Kraft Postal Serv.*, No. 3:03-cv-1113-K, 2003 WL 21355439, at *1 (N.D. Tex. June 6, 2003), *rec. accepted*, 2003 WL 21467745 (N.D. Tex. June 18, 2003).

Hyatt argues in sum that "[t]he instant action and the prior litigation appear to be based upon the same general series of events, facts, and conditions. As such, Stancu is seeking to have a *second* bite at the litigation apple, which is impermissible under the IFP statute." Dkt. No. 38 at 8. But Hyatt has not shown, at least on this motion to dismiss, that these actions should be dismissed as malicious under the principles of *res judicata*.

The key principle at issue here is that courts in this circuit apply "the 'transactional test' to determine if later-brought claims are precluded by an earlier-brought lawsuit." *Murry v. GSA*, 553 F. App'x 362, 365 (5th Cir. 2014) (per curiam)

(citing *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)); *see Nilsen v. City of Moss Point*, 701 F.2d 556, 563 (5th Cir. 1983) (en banc) ("The doctrine of *res judicata* contemplates, at a minimum, that courts be not required to adjudicate, nor defendants to address, successive actions arising out of the same transaction, asserting breach of the same duty.").

> "The critical issue under the transactional test is whether the two actions are based on the 'same nucleus of operative facts.'" "What grouping of facts constitutes a 'transaction' or a 'series of transactions' must 'be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Murry*, 553 F. App'x at 365 (quoting *Davis*, 383 F.3d at 313 (quoting, in turn, RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982))).

Under these principles, for instance, a plaintiff may not bring "a second Title VII discrimination suit arising from events related to the discriminatory acts alleged in an earlier Title VII suit." *ASARCO, L.L.C. v. Mont. Res., Inc.*, 858 F.3d 949, 957 (5th Cir. 2017) (citing *Davis*, 383 F.3d at 314). In rejecting the *Davis* plaintiffs' argument "that although the conduct alleged in the second suit happened before they filed the first one, they could not have asserted the claims in the earlier suit because they had not cleared the procedural hurdle of exhaustion with the EEOC," the Fifth Circuit panel "emphasized that the operative facts alleged in the second case had occurred before the first lawsuit was filed. The plaintiffs thus could have also alleged

that conduct in the first suit and sought a stay of those claims pending receipt of a right-to-sue letter from the EEOC." *Id.* (citing *Davis*, 383 F.3d at 314-16).

So the key to determine if apparently serial litigation is malicious under *res judicata* principles is whether "the claim asserted in the later suit had accrued at the time of the first suit that did not include the claim." *Id.* (citing *Davis*; *Murry*; *Nilsen*); *see, e.g.*, *Munoz v. Aldridge*, 894 F.2d 1489, 1495 (5th Cir. 1990) ("Manuel Munoz's individual claims in this case cannot be barred by his prior litigation of individual claims based on earlier, different alleged instances of discrimination."); *Fenelon v. U.S. Postal Serv.*, 43 F.3d 669, 1994 WL 724994, at *3 (5th Cir. Dec. 14, 1994) (per curiam) ("All of the alleged instances of discrimination are 'claims' in support of Fenelon's 'cause of action' of handicap discrimination and reprisals. Fenelon was discharged on February 27, 1991. The latest date of an alleged act of discrimination was March 15, 1991, when her back pay was denied. All of the other alleged instances occurred in the time period leading up to and resulting in her dismissal on February 27, 1991. Fenelon could and should have raised all those claims in a single proceeding.")[1]; *cf. Ayissi v. Kroger Tex., L.P.*, Civ. A. No. H-20-227, 2020 WL 6703844,

---

[1] *See also Havercombe v. Dep't of Educ. of Commw. of P.R.*, 250 F.3d 1, 4 (1st Cir. 2001) ("In this case, Havercombe has already won a jury verdict in his favor, albeit receiving a remitted award. Had he been suffering on-going discrimination of the type he was in the process of actively litigating during the pendency of the first trial, he has only himself to blame for not bringing it to the court's attention and amending his complaint accordingly. The trial commenced on February 9, 1999, a time by which all of the discrimination alleged in *Havercombe II* had occurred."); *Geter v. U.S. Gov't Publ'g Office*, 268 F. Supp. 3d 34, 42 (D.D.C. 2017) ("[E]ven

at *4 (S.D. Tex. Nov. 13, 2020) ("To the extent that Ayissi claims that her suit is permitted as a 'subsequent wrong,' she is mistaken because all of the conduct complained of in *Ayissi II* and the present suit occurred before the filing of *Ayissi II*. Therefore, no claims in the present suit are "subsequent wrongs" to which res judicata is inapplicable. Instead, the court must assess whether the transactional test is satisfied.").

Here, Stancu may duplicate many averments across his series of suits. But, as established by the applicable background chronology, above, his subsequent lawsuits are based (at least in some part) on subsequent facts, as evidenced by his subsequent EEOC charges and subsequent right-to-sue letters. *Cf. Welsh v. Ft. Bend Indep. Sch. Dist.*, 860 F.3d 762, 766-67 (5th Cir. 2017) (examining Texas *res judicata* principles and "reject[ing] FBISD's argument that Welsh was required to amend her petition in *Welsh I* to include claims that were not mature at the time of filing *Welsh I*. We specifically reject the idea that every time something happens after a lawsuit is filed the plaintiff must immediately amend or risk losing that claim forever. In the

---

assuming, *arguendo*, that the new claims are part of the same transaction as the claims in *Geter I*, because the instant claims had not occurred when *Geter I* was filed, Mr. Geter was not required to raise them in *Geter I*. The filing date is the cut-off for claim preclusion." (citations omitted)); *Sims-Eiland v. Detroit Bd. of Educ.*, 173 F. Supp. 2d 682, 687 (E.D. Mich. 2001) ("Because two Judgments have been entered which involved conduct through April 14, 1997, the claims through that date, including race, color, sex/gender, religion and national origin discrimination and retaliation are barred by *res judicata*.").

- 17 -

employment context, FBISD's proposed rule would require a plaintiff to repeatedly amend her petition and then stay her initial lawsuit to file charges with the EEOC for conduct that arises during that lawsuit. Such a rule is not feasible where a plaintiff remains employed and is subject to discrimination maturing after the filing date." (footnote omitted); *id.* at 767 n.6 ("Although not determinative, we note that many of our sister circuits have determined that federal res judicata law does not bar claims based on facts that occurred after the filing of the first lawsuit." (citations omitted)).

Regardless, Hyatt has not carried its burden to show that these cases should be dismissed as either malicious as that term in the IFP statute is commonly understood (for the reasons set out above) or malicious under the authority that Hyatt cites to support a Section 1915(e)(2)(B)(i) dismissal for being disrespectful of the Court.

**Recommendation**

The Court should deny Defendant Hyatt Corporation's motion to dismiss this consolidated action under 28 U.S.C. § 1915(e)(2) that alternatively requests that the Court further consolidate these consolidated cases with an action that Plaintiff John Stancu filed in 2020 [Dkt. No. 38] without prejudice to the parties' meeting and conferring and filing a joint proposal in support of consolidation that would result in the administrative closure of these cases in favor of litigating all claims Stancu now asserts against in Hyatt in the last-filed matter.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 30, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE